<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

BATH UNLIMITED, INC.,

                              Plaintiff,

      vs.

GINARTE, O'DWYER, WINOGRAD AND
LARACUENTE**,** et als.

                         Defendants.

Civil Action No. 04-03919 (KSH)

**<u>OPINION</u>**

<u>**KATHARINE S. HAYDEN, U.S.D.J.**</u>

     Plaintiff Bath Unlimited, Inc. ("Bath" or "plaintiff") filed suit against defendants Ginarte, O'Dwyer, Winograd and Laracuente ("GOW&L"),  Michael Policastro ("Policastro"), and 86 former and current employees of Bath ("claimant defendants") on August 16, 2004 in the District of New Jersey.  The complaint alleges that GOW&L, Policastro, and the claimant defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); conspired to violate RICO, 18 U.S.C. § 1962(d); violated the New Jersey RICO statute, <u>N.J.S.A.</u> 2C:41-2(c); conspired to violate the New Jersey RICO statute, <u>N.J.S.A.</u> 2C:41-2(d); violated common law fraud and common law conspiracy; and violated New Jersey

1

Workers' Compensation fraud statute, <u>N.J.S.A.</u> 34:15-57.4(b). Currently before the Court is defendants' motion to dismiss the complaint based on principles of abstention and lack of justiciability under the ripeness doctrine. The New Jersey Advisory Council on Safety and Health and the New Jersey State Council of Machinists, AFL-CIO District 15 (collectively, "amici") filed an *amici curiae* brief in support of defendants' motion to dismiss. of dismissal. For the reasons that follow, the motion to dismiss is **denied.**

## I.      MOTION TO DISMISS STANDARD

When considering a motion to dismiss, all allegations in the non-movant's pleadings are accepted as true, and all reasonable inferences are drawn in the non-movant's favor. <u>Curtis v. Everette</u>, 489 F.2d 516, 518 (3d Cir. 1973). Therefore, all facts herein are taken from the pleadings and will be deemed true for the purposes of this motion. The pleadings include a RICO Case Statement, which the Court ordered plaintiff to file in accordance with <u>L.Civ.R.</u> 16.1(b)(4). Since the RICO Case Statement "is considered a pleading and . . . falls within the scope of (<u>Fed.R.Civ.P.</u>) Rule 11," all allegations contained in the RICO Case Statement will also be deemed true. <u>Mruz v. Caring, Inc.</u>, 991 F.Supp. 701, 719 n.26 (D.N.J. 1998). <u>See also</u> <u>Dennis v. Gen. Imaging, Inc.</u>, 918 F.2d 496, 511 (5th Cir. 1990); <u>Sil-Flo, Inc. v. SFHC, Inc.</u>, 917 F.2d 1507, 1516 (10th Cir. 1990). The Court is also entitled to consider "exhibits attached to the complaint and matters of public record." <u>Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). In considering the movant's allegations, the trial court need not credit "bald assertions" or "legal conclusions." <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1429-30 (3d Cir. 1997) quoting <u>Glassman v. Computervision Corp.</u>, 90 F.3d 617, 628 (1st Cir. 1996).

II.     **BACKGROUND**

Bath is a New Jersey corporation doing business as Melard Manufacturing Corporation ("Melard"), headquartered in Randolph, New Jersey.  (Compl. ¶ 9.)  Defendant Policastro is an attorney at the law firm of defendant GOW&L.  (Compl. ¶ 11.)  The remaining 86 named defendants were employed by Bath at the Melard facility in Passaic,  New Jersey, and have all filed workers' compensation claims during the period from September,  2002 to the present. (Compl. ¶ 12.)  Bath manufactured plastic bathroom components at the Melard facility and also packaged and shipped bathroom products that were manufactured elsewhere.  (Compl. ¶ 16.)  In 2002, Bath decided to cease the manufacturing arm of its business and move the packaging and distribution functions to another facility.  (Compl. ¶ 17.)  On October 18 and December 3, 2002 and January 3, 2003, Bath laid off a total of 112 employees after giving notice pursuant to the Worker Adjustment and Retraining Notification Act ("WARN") in August, 2002.  (Compl. ¶ ¶ 20-21.)  According to the complaint, the layoffs angered several employees at the Melard facility and they consulted with Policastro and GOW&L, who instructed them to file workers' compensation claims against Bath.  (Compl. ¶ ¶ 22-23.)  Bath alleges that this advice was given without any investigation into the claims and without good faith belief in the merits of the claims. (Compl. ¶ 23.)  Bath further alleges that the advice to file the workers' compensation claims was the genesis of a scheme to defraud Bath through the systematic filing of fraudulent workers' compensation claims.  (Id.)  The complaint states that certain Bath employees, in furtherance of the scheme, actively recruited fellow employees to file fraudulent workers' compensation claims through GOW&L and Policastro, and instructed these fellow employees as to how to fake symptoms of injuries.  (Compl. ¶ ¶ 24-25.)

3

The majority of the workers' compensation claim petitions that the employees filed are identical except for the personal information identifying the particular claimant. (Compl. ¶ 28.) All claim petitions categorize the injuries as "orthopedic," "neurological," "neuropsychiatric," and "other," and further describe the injuries as "[e]yes, ears, nose, throat, back, neck, lungs, pulmonary internal organs, nervous system, cardiovascular." (Compl. ¶ 29.) Each petition lists the dates of the injuries as coextensive with the dates of a claimant's employment with Bath. (Id.) The claim petitions were prepared, signed, and filed before the claimant defendants were examined by any doctors in connection with the injuries alleged, and without any medical evidence to support the claimed injuries. (Compl. ¶ 31.) Bath alleges that the defendants intended to force Bath to settle the claims as a group rather than defend each claim individually, thereby guaranteeing the greatest financial gain to the defendants. (Compl. ¶ 33.)

Additionally, Bath alleges that Policastro and GOW&L directed the claimant defendants to give false information to examining doctors and to manipulate the medical tests in order to ensure findings of disability commensurate with the filed workers' compensation claim petitions. (Compl. ¶ 35.) Virtually all of the claimant defendants who were examined by physicians on behalf of Bath were found to have no disabilities. (Compl. ¶ 37.)

The complaint asserts that the defendants devised and implemented a scheme to defraud Bath by filing false and fraudulent workers' compensation claims (Compl. ¶ 41) and by making various fraudulent misrepresentations regarding the claimant defendants' medical conditions and injuries (Compl. ¶ 42.) In order to implement the scheme, the complaint asserts that defendants used the mails to send letters, submissions, and other materials in furtherance of the scheme to defraud plaintiff, in violation of the federal mail fraud statute, 18 U.S.C. § 1341. (Compl. ¶ 43.)

4

III.    DISCUSSION

Defendants first argue that the plaintiff's claim should be dismissed under principles of abstention.  If the Court does not abstain, defendants alternatively argue that the claim is not justiciable for lack of ripeness.

A.      Abstention Law – Generally

Under the principle of abstention, a federal court having jurisdiction may, in certain instances, decline to hear a case   "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188 (1959). Abstention is the exception, and not the rule,  Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976), and federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Id. at 817.

The United States Supreme Court has handed down a series of decisions on abstention that begins with Railroad Commission of Texas v. Pullman, 312 U.S. 496 (1941).  Pullman abstention instructs federal courts to abstain from ruling on federal constitutional issues where clarification of an uncertain state law might make the federal constitutional ruling unnecessary. Pullman abstention does not apply to this case because there is no necessity for a federal constitutional ruling to decide the issues involved.  Younger abstention, Younger v. Harris, 401 U.S. 37 (1971), provides that a federal court cannot enjoin pending state court criminal proceedings, and is also inapposite to the present case.  Thibodaux abstention, from Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959), instructs federal courts to abstain

5

in diversity cases where the underlying state law is unclear and there is a state interest at stake that is "intimately involved" with the state government's "sovereign prerogative." Id. at 28.  At issue in Thibodaux was "[a] determination of the nature and extent of delegation of the power of eminent domain" between the city of Thibodaux and the state of Louisiana.  Id.  The Court held that the special nature of this eminent domain controversy justified abstention by the federal court under principles of federalism.  Thibodaux abstention is also inapplicable to the case at bar.

In Burford v. Sun Oil Co., 319 U.S. 315 (1943), the Court announced an abstention doctrine that applies where a case is filed in federal court that involves difficult state law about a matter of substantial public concern, or where federal review would disrupt state efforts to establish a coherent policy about a matter of substantial public concern.  Id. at 332-335. Defendants argue, inter alia, that Burford abstention applies to this case.  In Burford, Sun Oil Company sued over an agency decision by the Texas Railroad Commission that granted landowner G. E. Burford permission to drill four oil wells on his small tract of land adjacent to Sun Oil's land.  Id. at 316-317.  The Supreme Court affirmed the district court's decision to abstain because a comprehensive and complex regulatory system existed in the state courts to review the order of the agency, and because of the importance of gas and oil regulation to the state of Texas.  Id. at 332-334.   The Court noted that its primary concerns were to prevent federal interference with the administrative processes of the state and to avoid possible conflict between differing state and federal holdings on complex issues due to federal misunderstanding of state administrative law.  Id. at 326-327.

Decades later,  in Colorado River Water Conservation District v. United States, 424

U.S. 800 (1976),  the Court refused to apply <u>Burford</u> abstention in a lawsuit brought by the United States on behalf of itself and two Indian tribes. At issue was the allocation of water rights along certain rivers and tributaries in Colorado.  In arriving at its decision the Court recognized that the federal lawsuit might result in a holding that conflicted with the outcome in state litigation, but ruled that the potential for such conflict did not justify the district court's abstention because there was no unsettled state law at issue in the case, nor any question that would have had a bearing on state policy or implementation of state policy. "The potential conflict here, involving state claims and federal claims, would not be such as to impair impermissibly the State's effort to effect its policy respecting the allocation of state waters. Nor would exercise of federal jurisdiction here interrupt any such efforts by restraining the exercise of authority vested in state officers." <u>Id.</u> at 815-816.   Although the Court did not apply <u>Burford</u> abstention, it affirmed the district court's decision to abstain based on what has become known as the <u>Colorado River</u> "exceptional circumstances" test.

The Court reasoned  that some rare and exceptional cases exist  in which a federal court should relinquish jurisdiction to a concurrent parallel state proceeding for reasons of "wise judicial administration." <u>Id.</u> at 818.  The Court identified some of the  factors to be weighed against the heavy jurisdictional obligation of the federal court, as follows: (1) problems resulting from both courts attempting to assume jurisdiction over the same *res*; (2) the inconvenience of the federal forum as compared to the state forum; (3) the desire to avoid piecemeal litigation; and (4) which proceeding was filed first.  <u>Id.</u>  Applying these factors to the case before the Court, the <u>Colorado River</u> opinion pointed out that the McCarran Amendment, a federal law that provides for the adjudication of federal water rights,  evidenced a clear congressional intent to

7

avoid "piecemeal adjudication of water rights in a river system."  Id. at 819.  In addition, the

Court noted the inconvenience of the federal forum compared to the state forum, the numerous

proceedings already conducted in the state forum compared to the absence of post-complaint

proceedings in the federal forum, and "the extensive involvement of state water rights."  The

Court held that this combination of factors was enough to outweigh the jurisdictional obligation

of the federal court and affirmed the district court's decision to abstain.

        In Moses H. Cone Memorial Hospital v. Mercury Construction Co., 460 U.S. 1

(1983), the Court clarified the fourth factor of the Colorado River analysis, and stated that the

relevant issue was not so much which proceeding had been filed first, but "how much progress

has been made in the two actions."  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460

U.S. 1, 21 (1983).  The Court also added a fifth factor to be considered in the analysis, which is

to be weighed heavily against abstention:  the existence of a federal question. Id. at 23.  And in

this Circuit. a sixth factor to the Colorado River analysis was added in Spring City Corp. v.

American Buildings Co., 193 F.3d 165 (3d Cir.1999): whether the state court will adequately

protect the interest of the parties.  Id. at 171.

        The Supreme Court further addressed  Burford abstention in New Orleans Public

Service, Inc. v. Council of City of New Orleans, 491 U.S. 350 (1989).  There,  New Orleans

Public Service ("NOPSI") brought an action in state court for review of an agency decision that

rejected, in part, NOPSI's request for an increase in its retail electrical rates.  At the same time,

NOPSI filed a parallel proceeding in federal court for declaratory and injunctive relief from the

agency's order.  The Supreme Court overruled the district court's decision to abstain under

Burford and clarified the Burford abstention doctrine by noting that the mere existence of

complex state administrative procedures was not enough to justify abstention, nor was abstention justified "in all cases where there is a 'potential for conflict' with state regulatory law or policy." NOPSI at 362 (citation omitted). The NOPSI Court summarized Burford abstention as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

NOPSI, 491 U.S. at 361, quoting Colo. River at 814.


### 1.    Burford Abstention

The above authority indicates that the threshold question that this Court must answer prior to applying Burford abstention is *whether there is timely and adequate state-court review available for Bath's federal claim against the defendants*. Defendants contend that state court review is available based on the fact that the 86 workers' compensation claims can be consolidated into a joint hearing,[1] and that the Workers' Compensation fraud claim can be heard by the Workers' Compensation court.   They do not address the availability of any state court review on the other substantive facets of plaintiff's claim.  In opposing, plaintiff points out that the Workers' Compensation Court is a court of limited jurisdiction and does not have the

---

[1]The Court has been unable to find the code section cited by defendants, N.J.A.C. 12:235-5.10(h) (Def. Moving Br. at 17) in support of this argument.

ability to hear RICO claims.

"Where a state court lacks jurisdiction over a plaintiff's claim, *Burford* abstention is clearly inappropriate because there can be no opportunity for "timely and adequate state court review" of a claim that a court has no power to decide." Riley v. Simmons, 45 F.3d 764, 773 (3d Cir. 1995).  State courts do have concurrent jurisdiction over civil RICO claims, Tafflin v. Levitt, 493 U.S. 455, 458 (1990), but for this purpose, the New Jersey Workers' Compensation Courts do not fall into the category of "state courts."  The jurisdiction of the Workers' Compensation Court is limited to that conferred by statute,  N.J.S.A. 34:15-1 to -128; see Young v. Western Electric Co., Inc., 96 N.J. 220, 225 (1984), or "such as is by fair implication incident to the authority expressly granted." Conway v. Mister Softee, Inc., 51 N.J. 254, 258 (1968). Defendants do not provide authority suggesting that a Worker's Compensation Court may address civil RICO lawsuits, or failing that, how a state court of general jurisdiction would address worker's compensation claims. Further, the NOPSI decision specifies that the requirement of "timely and adequate state-court review" refers to state court review of "the proceedings or orders of state administrative agencies,"  491 U.S. at 361, something that this Court is decidedly not being asked to review.

In  Keeley v. Loomis Fargo & Co., 183 F.3d 257(3d Cir. 1999), Judge Becker added in a lengthy footnote a reminder about where Burford abstention does and does not apply that is germane to the issue before this Court.  Keeley involved an overtime pay dispute between a private employer and a number of its employees.  The issue turned on whether the Commissioner of Labor had exceeded his authority in excluding certain trucking industry employees, including the plaintiffs, from New Jersey's mandatory overtime requirement. The

Third Circuit rejected a belated argument of the plaintiffs that the district court should have

applied <u>Burford</u> abstention.  Citing <u>NOPSI</u>, the court found plaintiffs' position had no merit.

> *Burford* abstention applies when a federal court is asked to enjoin a state
> administrative order that will injure the plaintiff (such as an order granting an
> oil drilling permit to a competitor or denying the plaintiff permission to
> discontinue an unprofitable line of business). . . .The present case primarily
> involves a claim for damages, not equitable relief. Further, there are no
> "proceedings or orders of state administrative agencies" at issue here, only
> state regulations of general applicability. Cases implicating *Burford*
> abstention involve state orders against an individual party that a federal-court
> plaintiff seeks to enjoin. Here, there is a state regulation that affects all
> trucking industry employers, not a specific administrative order aimed at one
> party. Therefore, abstention under *Burford* is clearly inappropriate.

183 F. 3d at 273 n.13.

Defendants cannot claim they are seeking <u>Burford</u> abstention to ward off a state

administrative order that will injure them.  But they do argue that plaintiff is required to

exhaust its available administrative remedies through the Division of Workers'

Compensation prior to seeking relief from the federal courts.  However, as indicated earlier,

relief on this complaint is not available from an administrative agency – the only one of the

claims asserted in this lawsuit that the Workers' Compensation Court has jurisdiction to hear

is the Workers' Compensation fraud violation.

Even assuming, *arguendo*, that relief for this claim were available from an administrative

agency, the stated purposes of the exhaustion of remedies doctrine are to avoid interrupting the

administrative procedure and to prevent interference with the administrative process.  <u>McKart v.

U.S.</u>,  395 U.S. 185, 193-195 (1969).  A decision made by this Court will not interrupt the

activities of the Division of Workers' Compensation nor interfere with its administrative

process.  This Court does not agree with defendants' analysis that "the core of the cases is

absolutely identical: whether the pending compensation petitions are valid." (Def. Moving Br. at

17.)  The elements of plaintiff's civil RICO claim based on predicate acts of mail fraud are not

identical to a workers' compensation claim, nor are plaintiff's various common law claims.

      This last point bears repeating: the predicate act alleged in the RICO claim is mail fraud,

not, as defendants suggest, the filing of fraudulent Workers' Compensation claims.  The

substantive elements of mail fraud under 18 U.S.C. § 1341 are: "1) the existence of a scheme to

defraud; 2) the use of the mails in furtherance of the fraudulent scheme; and 3) culpable

participation by the defendant."   United States v. Pearlstein, 576 F.2d 531, 534 (3d Cir. 1978).

In Schmuck v. United States, 489 U.S. 705, 715 (1989), the Supreme Court acknowledged that

the mailing element for mail fraud may be met by mailings "that contain no false information,"

as long as the mailings are "part of the execution of the scheme as conceived by the perpetrator

at the time." Arguably, this Court could find that the elements of mail fraud are satisfied

regardless of whether or not the Division of Workers' Compensation approves the workers'

compensation claims.

      To be sure, there are overlapping issues that may require similar factual determinations

in both the case before this Court and the pending workers' compensation cases, and disposition

of the workers' compensation claims by the Division may be of some evidentiary value to the

case at bar.  However, the decisions of the Division will not, in and of themselves, dispose of the

federal claims before this Court and will not, contrary to defendants' assertion, render the

federal claims moot, nor are they necessary to federal court adjudication of this matter.

Defendants are conflating the veracity of the underlying workers' compensation claims into the

essence of the RICO claim, when it is only one of the evidentiary matters incident to the RICO claim.

Therefore, this Court concludes that the exhaustion of remedies doctrine does not apply, which thrusts the inquiry back to whether defendants have established that there is a state administrative order that will injure them, and thus possibly trigger <u>Burford</u> abstention. Assuming for purposes of addressing their next arguments that the threshold state law review requirement is met – something that is not at all certain because the defendants have failed to give a convincing argument that adequate review exists in the state courts – the next inquiry relates to whether this is a Court "sitting in equity" for purposes of the <u>Burford</u> analysis. Defendants maintain that plaintiff's demand for revocation of defendant Policastro's license to practice law meets this requirement; plaintiff has not addressed it.  The Court notes that the majority of the claims seek only money damages – the prayer for relief includes compensatory damages on all 32 counts of the complaint, exemplary damages and costs and attorney's fees. The only equitable relief requested is the revocation of defendant Policastro's law license.

In <u>Feige v. Sechrest</u>, 90 F.3d 846 (3d Cir. 1996), the Third Circuit addressed whether <u>Burford</u> abstention can be applied where a complaint includes claims for legal relief, not solely equitable relief.  In <u>Feige</u>, as in the case at bar, the vast majority of the claims were for money damages – claims that are legal in nature.  After analyzing a series of holdings from the Circuit and the U.S. Supreme Court, the court concluded that <u>Burford</u> abstention may be applied both in cases at equity and at law with the caveat that in actions at law, a court is only entitled to apply abstention in the form of a stay of proceedings – it may *not* dismiss or remand.  In an action at

equity, on the other hand,  a court may apply abstention in any of its forms – dismiss, stay, or

remand.  <u>Id.</u> at 850-851.  This comports with the Supreme Court's holding in <u>Quackenbush v.</u>

<u>Allstate Insurance Co.</u>, 517 U.S. 706 (1996):

> We have thus held that in cases where the relief being sought is equitable in
> nature or otherwise discretionary, federal courts not only have the power to
> stay the action based on abstention principles, but can also, in otherwise
> appropriate circumstances, decline to exercise jurisdiction altogether by either
> dismissing the suit or remanding it to state court. By contrast, while we have
> held that federal courts may stay actions for damages based on abstention
> principles, we have not held that those principles support the outright
> dismissal or remand of damages actions."

<u>Id.</u> at 721.

Since abstention may be applied, albeit in differing degrees, both where the requested

relief is at equity as well as where the requested relief is at law, this threshold requirement has

been met in the case at bar.

Moving to the substance of <u>Burford</u> abstention, it is appropriate only where federal court

action would "interfere with the proceedings or orders of state administrative agencies" where

there are "difficult questions of state law bearing on policy problems of substantial public import

whose importance transcends the result in the case then at bar," or where the "exercise of federal

review of the question in a case and in similar cases would be disruptive of state efforts to

establish a coherent policy with respect to a matter of substantial public concern."  <u>NOPSI</u>, 491

U.S. at 361 (quoting <u>Colo. River</u>, 424 U.S. at 814.)

Plaintiff urges this Court to adopt the reasoning in  <u>Tribune Co. v. Purcigliotti</u>, 869

F.Supp. 1076 (S.D.N.Y. 1994), a case that is very similar to the case before this Court.  In

<u>Tribune</u>, the employer brought a RICO action against, *inter alia*,  a law firm, an attorney, and

585 former employees who had filed workers' compensation claims against the employer.  The

New York State Workers' Compensation Board intervened and moved to dismiss on abstention

grounds.  The court found that the case did not involve difficult or unsettled questions of state

law, but did involve difficult and substantial issues of *federal* law that transcended the

importance of the underlying (state) workers' compensation claims.  The court acknowledged

the possibility of conflict arising from inconsistent factual determinations with regard to the

workers' compensation claims, but found no cognizable threat of interference or disruption with

the state's efforts to establish a coherent workers' compensation policy.

Defendants argue that the New Jersey workers' compensation law is "highly

specialized and technical (and) is a primary State concern," noting the state's "intensive efforts

in recent years to combat the problem of insurance fraud."   Defendants further maintain that

federal review would "compromise and impair the State's comprehensive compensation

regulatory framework," but fail to explain how federal review would cause such interference.

Even if this Court assumes, *arguendo*, that the New Jersey Workers' Compensation Act

presents difficult questions of state law that are of greater importance than the issues in the

federal claim, federal adjudication of the present claim will not interfere with the workings of

the Division of Workers' Compensation.  The Division is free to hear the underlying workers'

compensation claims as it sees fit, and to decide the claims consistent with its own

comprehensive procedural framework.  Facing head-on the possibility that a decision about the

truthfulness of the claimant defendants' compensation claims made in the federal lawsuit might

conflict with the ultimate decision of the Division, that possibility is not enough to decline to

exercise jurisdiction.  Colo. River at 815-816.  "The general rule regarding simultaneous

litigation of similar issues in both state and  federal courts is that both actions may proceed until

one has come to judgment, at which point that judgment may create a *res judicata* or collateral

estoppel effect on the other action."  Univ. of Md. at Baltimore v. Peat Marwick Main & Co.,

923 F.2d 265, 276-276 (3d Cir. 1991).

Plaintiff also asserts that there is a heightened level of justification required for

abstention when there is a federal basis for jurisdiction. This Court notes that the Supreme Court

in  Colorado River also stated that "the presence of a federal basis for jurisdiction may raise the

level of justification needed for abstention."  Colo. River, 424 U.S. at 815, n.21.  Jurisdiction in

the present case was invoked under 28 U.S.C. § 1331, commonly known as federal question

jurisdiction, as well as 18 U.S.C. § 1964(c), which vests the federal courts with subject matter

jurisdiction over civil RICO claims. This Court agrees that since there is a federal basis for

jurisdiction,  a heightened level of justification for abstention is needed.

Defendants suggest two additional justifications for abstention:  the chill that failure to

abstain will have on future workers' compensation claimants, and interference with the

attorney/client relationship.  As to the first argument, defendants state that the complaint "has

halted all the Workers' Compensation claims that were being adjudicated at the administrative

level." (Def. Moving Br. at 2.)  But they have not explained why that happened, nor have they

cited any legal authority to support their contention that it must happen.  Additionally, it appears

that the proceedings on four claims were adjourned by request of both sides, including

Policastro, the claimants' attorney.  (Transcript of Division of Workers' Compensation

16

Proceedings at 7, Alcantara, Maldonado, Cancel, and Jaramillo v. Melard Manufacturing, Nos. 02-29090, 02-31420, 02-31533, 02-32060 (Dep't of Labor Sept. 13, 2004)).   It appears, therefore,  that the "chilling" effect on the claimant-defendants, such as it may be, is self-inflicted.  Finally, this Court agrees with the plaintiff that only on rare occasions would an employer be able to allege facts sufficient to meet the pleading requirements of a RICO action in connection with the filing of workers' compensation claims.  Therefore, the possibility of a chilling effect on workers' compensation claims is attenuated at best.

Defendants also argue that abstention is mandated because the federal litigation will destroy the attorney/client relationship by making the attorneys and the clients co-defendants in the federal case,  thereby precluding the claimant-defendants' chosen representation in the workers' compensation cases.  However,  if the allegations are true, and this Court must accept them as true for the purposes of this motion to dismiss, it is the attorneys' involvement in a mail fraud scheme with their clients that has jeopardized the attorney-client relationship, not the pendency of this claim.

Defendants' final abstention-related  argument is that the doctrine of primary jurisdiction mandates that this Court stay the proceedings in order to allow the Division of Workers' Compensation to determine the validity of the claimant-defendants' claim petitions.  However, the doctrine of primary jurisdiction is properly invoked only "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion." Far East Conference v. United States, 342 U.S. 570, 574 (1952).  See also United States v. Western P.R. Co., 352 U.S. 59, 64 (1956).  First, it is not outside the conventional

experience of federal judges to pass on the veracity of medical claims – by way of a quick example, appeals from determinations of the Commissioner of Social Security about medical disability are routinely handled by district judges.  Second, as discussed fully above, the validity of the claim petitions is merely part and not all of the factual landscape underlying the federal claims.  This Court does not require the Division to resolve any issue in order  to rule on the evidentiary weight of the claim petitions vis-à-vis the mail fraud claim.

Based on the foregoing, this Court concludes that Burford abstention is not warranted in the case at bar.

**2.      Colorado River Abstention**

Defendants alternatively argue that this Court should decline jurisdiction under the doctrine of Colorado River abstention.  They maintain that since the state and federal proceedings "parallel each other" (Def. Moving Br. At 17), this Court should abstain to avoid duplicative litigation based on considerations of wise judicial administration.   Plaintiff opposes application of Colorado River abstention, citing the court's analysis in Tribune Co. v. Purcigliotti, 869 F.Supp. 1076 (S.D.N.Y. 1994), and the U.S. Supreme Court's analysis in Moses H. Cone Memorial Hospital v. Mercury Construction Co., 460 U.S. 1 (1983).  In the Tribune case, the court found that the existence of concurrent state and federal actions involving similar issues was insufficient to warrant abstention under Colorado River, and in Moses H. Cone Memorial Hospital, the Court cautioned that Colorado River abstention should apply only in exceptional cases, with the balance heavily weighted in favor of maintaining jurisdiction.

Of course the threshold question that this Court must answer prior to applying Colorado

River  abstention is *whether the proceedings are parallel.*  Yang v. Tsui, 416 F.3d 199, 205 n.5 (3d Cir. 2005) ("The threshold question in this (Colorado River) analysis is whether there is a parallel state proceeding."); Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir. 1997) ("A threshold issue that must be decided in any *Colorado River* abstention case is whether the two actions are 'parallel'.  If they are not, then the district court lacks the power to abstain.")

"Cases are parallel if they involve the same parties and 'substantially identical claims,' raising 'nearly identical allegations and issues.'"  Timoney v. Upper Merion Tp., 66 Fed.Appx. 403, 405 (3d Cir. 2003) (quoting Trent v. Dial Medical of Fla., Inc., 33 F.3d 217, 223 (3d Cir. 1994) (overruled in part on other grounds)).  Although Defendants claim that these proceedings parallel each other, they admit that the cases involve different parties, and that the cases "are not identical."  (Def. Moving Br. At 17.)  Plaintiff asserts that while certain issues in the federal action are similar to those in the state action, the cases are not parallel.

On this issue, Third Circuit law is specific:  "[W]hile certain issues to be litigated in the . . . federal claim may be identical to issues that have or will be raised . . . in state court, the lack of identity of all issues necessarily precludes *Colorado River* abstention."  Univ. of Md. at Baltimore v. Peat Marwick Main & Co., 923 F.2d 265, 276 (3d Cir. 1991).  In that case, certain policyholders of an insolvent insurer sued the insurer's auditor alleging false financial statements.  The state insurance commissioner intervened and moved to dismiss the case.  The district court dismissed under the doctrine of Burford abstention, based on the state's complex insurance regulatory scheme and a pending suit by the commissioner against the defendant.  The Third Circuit reversed and remanded, holding that Burford abstention did not apply because the

19

claims involved different causes of action and different parties.

In the case at bar, the only overlapping issue between the federal and state claims is the veracity of the workers' compensation claims.  The remaining claims in the 32-count federal complaint involve different causes of action, different facts, different elements, different allegations, different issues, and different parties.  Also, as discussed above, the federal claim is not reviewable in the Workers' Compensation Court.  "If the (federal) claims are not subject to review in the state forum, there can be no "parallel" state court litigation on the basis of which a federal court could exercise *Colorado River* abstention." Univ. of Md. At Baltimore v. Peat Marwick Main & Co., 923 F.2d at 276.  Since the federal and state proceedings are not "parallel" under the rubric of Colorado River, the threshold requirement of Colorado River abstention has not been met, and Colorado River abstention does not apply.

## B.      RIPENESS

Defendants' alternative position is that the federal claim should be dismissed because it is not justiciable under the ripeness doctrine.  "Ripeness concerns whether the legal issue at the time presented in a court is sufficiently concrete for decision." U. S. ex rel. Ricketts v. Lightcap, 567 F.2d 1226, 1232 (3d Cir. 1977).  To determine whether a dispute or claim has matured to a point warranting judicial intervention, a court analyzes "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967).

Defendants have again attempted to characterize the present action as calling upon this Court to review of a decision of the Division of Workers' Compensation that has yet to be made.

However, plaintiff has alleged concrete and ongoing injuries that are not dependant upon the final adjudication of the workers' compensation claims.  The RICO claims are cognizable and fit for judicial decision notwithstanding the fact that the Division of Workers' Compensation has not yet heard nor ruled on the employees' workers' compensation claims.

Defendants rely primarily on Felmeister v. Office of Attorney Ethics, 856 F.2d 529 (3d Cir. 1988) and  Nextel Communications of the Mid-Atlantic, Inc. v. City of Margate, 305 F.3d 188 (3d Cir. 2002), for their ripeness argument.  Felmeister concerned a challenge to a rule promulgated by an administrative agency concerning attorney advertising.  Since the plaintiffs had not been charged with violating the rule, nor had they submitting their advertising for review by the agency, the Third Circuit affirmed the district court's decision to dismiss the claim for lack of ripeness.  In Nextel, the plaintiff challenged an action by a local zoning board that charged the plaintiff with non-compliance with a building permit during the construction of a rooftop equipment cabinet.  The plaintiff had not been penalized nor fined, and the equipment cabinet was still in place and fully functioning.  The zoning board set a rehearing on the matter, but plaintiff filed suit in district court prior to the rehearing.  The district court denied the plaintiff's request for an injunction.  On appeal, the Third Circuit remanded the case for dismissal because the claim was not yet ripe for judicial review.  The court reasoned that since the zoning board had not yet made a final determination on the matter, the plaintiff's injury was purely hypothetical.

This Court does not find either authority persuasive.  In Felmeister,  the federal action was a challenge to an agency rule that had not yet wrought any harm on the plaintiff.  In Nextel,

21

the federal action was a challenge to a decision by a zoning board that was in the process of being reviewed.  In the case before this Court,  the core of the action is a RICO claim, not a challenge to any action (or inaction) by the Division of Workers' Compensation.  As a result, these cases are simply inapposite, and the lack of finality of the Workers' Compensation proceeding is not germane to the first prong of the ripeness inquiry, the fitness for judicial decision of the federal claims.

The second ripeness inquiry considers the hardship to the parties of court consideration of the allegedly unripe claim.  Defendants have averred hardship in that the pendency of the federal lawsuit has both inhibited the progress of the workers' compensation cases and harmed their relationship with their co-defendant attorneys.  In its RICO claim, plaintiff has alleged both past and ongoing injury to its business and property, as well as violation of numerous federal and state statutes.  "[T]he parties' hardship (must) be sufficient to overcome prudential interests in deferral. . . ." <u>Felmeister</u> at 537.  The cases analyzed in this opinion have not provided compelling prudential interests in deferral, and this Court finds that the plaintiff's hardship as asserted in the complaint sufficiently trumps any arguments presented that would support deferral.  This Court holds, therefore, that the plaintiff has alleged claims that are sufficiently ripe for judicial decision.

**CONCLUSION**

For the foregoing reasons,  the defendants' motion to dismiss on the grounds of abstention or lack of ripeness is **denied.**   An appropriate order will be entered.

Dated: September 29 , 2005

s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.